**Mary GONZALEZ–CARMELO, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 8, 2002.
Decided March 19, 2003.

John M. Hurtt, Wilkes–Barre, for petitioner.

Gene K. Cuccarese, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Mary Gonzalez–Carmelo (Petitioner) petitions for review of an adjudication of the Department of Public Welfare, Bureau of Hearings and Appeals (Department), denying her request for a restoration of cash assistance and food stamp benefits. In doing so, the Department affirmed the decision of the hearing examiner denying her appeal from a decision of the Luzerne County Assistance Office (CAO). We affirm the Department.

On June 13, 2000, Petitioner met with an income maintenance caseworker to report that she had recovered an unspecified amount under a tort claim settlement. Under the Temporary Assistance for Needy Families Program (TANF), Petitioner had been collecting cash assistance and food stamps appropriate for a three person household.[1] In addition, she and her two children were enrolled in the medical assistance program. At the conclusion of this meeting, Petitioner executed documents to effect a termination of cash assistance and food stamp benefits; however, she requested that her family's medical assistance benefits be continued. On the

---

1. In 1988, Petitioner was originally found eligible for cash assistance and food stamps. In November of 1993, Petitioner was determined eligible for supplemental security income (SSI) in addition to her cash assistance and food stamps. Although the number of persons belonging in Petitioner's household had changed since 1988, Petitioner was receiving SSI benefits for herself, medical assistance and food stamps for a three-person household and cash assistance for her two children as of June 13, 2000. Adjudication, Findings of Fact, 1–7.

same day, the CAO issued a confirming notice to Petitioner indicating that her benefits were being discontinued at her written and oral request.[2] Petitioner did not appeal or otherwise challenge the CAO's confirming notice of June 13, 2000.

On December 11, 2001, Petitioner requested the CAO to restore her terminated benefits. Her filing[3] with the CAO alleged that she had not been correctly advised by the CAO on her eligibility for benefits and, further, that she had signed the Voluntary Withdrawal Of Benefits Form under coercion from a field agent of the Office of Inspector General.

On December 26, 2001, the CAO, by William Schabener (Schabener), District Manager, denied Petitioner's request for a restoration of benefits for the stated reason that Petitioner voluntarily requested their termination. His conclusions were set forth in a letter in which he explained the basis for denying Petitioner's request. The letter stated,

> [Petitioner] visited the Hazleton District Office of the Luzerne County Assistance Office of her own volition on June 13, 2000. The stated purpose of [Petitioner's] visit was to report that, as excerpted from the narrative entry, "she had received a lump sum of money but was 'legally bound' not to disclose the amount or where it came from ... She asked for the children's cash to be closed, as well as F.S. She wanted only medical to continue." *When questioned by the responsible [Income Maintenance Caseworker] and, afterwards, by a Field Agent of the Office of the Inspector General as to why [Petitioner] wanted her cash and food stamps terminated, she replied that she was no longer in need of them.*
>
> To be precise, *at no time did any representative of the Hazleton District Office either explicitly state, or otherwise imply that [Petitioner] was ineligible* for continued benefits because of the receipt of a lump sum settlement.
>
> Additionally, with respect to events surrounding [Petitioner's] application interview conducted on or about December 4, 2001, at no time did any representative of the Hazleton District Office either explicitly state, or otherwise imply that [Petitioner's] cash and food stamp benefits were erroneously closed. As stated above, [Petitioner's] cash and food stamp benefits were closed based solely on an unsolicited written request made by [Petitioner].

Schabener Letter dated December 26, 2001 (emphasis added). Petitioner appeal-

---

2. State regulations provide that a confirming notice is to be issued to notify a discontinuance of cash assistance and medical assistance benefits. They provide as follows:

> The confirming notice is used to provide the client with confirmation of an action that has been taken.... The CAO shall take its action and provide the client with a confirming notice whenever one of the following changes occur:
>
> * * *
>
> (2) A decrease or discontinuance of a monthly assistance payment, MA benefits or services resulting from one of the following: (i) A written request signed by the client or someone acting on his behalf.

55 Pa.Code § 133.4(c)(2)(i). The food stamp program, however, is governed by the federal regulations. 55 Pa.Code § 501.1. The federal regulations provide that a letter confirming the voluntary withdrawal of food stamp benefits must be sent when the household does not provide a written request to terminate food stamp benefits. 7 C.F.R. § 273.13(b)(12).

3. In this filing, Petitioner was represented by Legal Services of North Eastern Pennsylvania, Inc. William McLaughlin, paralegal, personally represented Petitioner.

ed the CAO's determination to the Department.[4]

At the hearing before the hearing examiner, Schabener testified on behalf of the CAO. Schabener explained that he conducted a thorough review of the Petitioner's case file and interviewed the CAO representatives. His letter was placed into the record.

Next, Ruthann Schultz (Schultz), Income Maintenance Caseworker, testified. She explained that at the June 13, 2000 meeting, Petitioner stated that she wanted to discontinue her cash assistance and food stamp benefits because she had received a "settlement." However, the settlement agreement did not permit her to disclose the amount of the settlement or its source. Schultz conferred with her supervisor, who recommended that Petitioner speak with Michael Reddy, a representative of the Inspector General. She did so. Schultz then met again with Petitioner and informed her that she did not have to terminate her cash assistance or food stamp benefits. In response to Schultz, Petitioner stated that her bills were current; she had bought a car; she had made a down payment on a new home; and she was paying for private school for her daughter. Petitioner stated that she only needed medical assistance for the children. Accordingly, Schultz asked Petitioner if she wished to sign the voluntary withdrawal form, and Petitioner responded "yes, I want everything closed. I don't want to raise my children on welfare. I'll sign this." Testimony Transcript, 32 (Test. Tr. ____). Petitioner then signed the voluntary withdrawal form.

Schultz acknowledged at the hearing that her notes of the June 13, 2000 meeting did not record her discussion with Petitioner on her continued eligibility for benefits. Schultz explained that not every bit of information is put into case notes; the case notes serve only as a summary of contact with a client. Schultz also acknowledged that Petitioner and her children remained eligible for cash assistance and food stamp benefits as of June 13, 2000, notwithstanding the settlement.

Reddy also testified at the hearing. He explained that at Schultz's request, he had interviewed Petitioner. After showing his Inspector General badge, he inquired into the terms of her settlement. Petitioner explained that she had received approximately $67,000 in settlement of a medical malpractice action that she had filed. With those proceeds, Petitioner purchased a home for approximately $31,000 and a Dodge Durango truck. Petitioner stated that she wanted to close her welfare case because she was no longer eligible for benefits. Reddy informed her that she was still eligible for benefits and referred her back to Schultz. After her meeting at the CAO, Petitioner showed Schultz and Reddy her new truck.

4. On March 6, 2002, the CAO submitted a motion to dismiss the Petitioner's appeal alleging that Petitioner did not file the confirming notice in a timely manner and as a result Petitioner waived her right to an appeal. The Bureau, however, concluded that Petitioner's appeal was filed in a timely manner because the CAO did not actually deny Petitioner's request for restoration of lost benefits until December 26, 2001. Petitioner filed her appeal on December 31, 2001, which was within a few days of the actual denial. Bureau Adjudication, 4. The regulations provide that with regard to cash assistance, Petitioner has thirty days from the date of written notice of a decision or action by the CAO to file an appeal. 55 Pa.Code § 275.3(b)(1). For food stamps, a household may request a hearing within 90 days from the date of an action by the CAO or loss of benefits. 55 Pa.Code 275.3(b)(4). The issue relating to the timeliness of Petitioner's appeal has not been raised on appeal.

Petitioner also testified at the hearing. Petitioner claimed that Schultz informed her that she no longer qualified for food stamp benefits because her new vehicle was too valuable. Petitioner also stated that she refused to disclose the specifics of her settlement because of a confidentiality agreement; however, she offered the name of her attorney for Schultz to contact. At this point, Schultz called Reddy into the office, who, according to Petitioner, informed her that she was not eligible for assistance benefits. Petitioner asserted that she felt intimidated by Reddy because he told her that he was with the Fraud Investigation Unit. She claimed that Reddy told Petitioner that she should sign the voluntary withdrawal form. Finally, Petitioner claimed that the voluntary withdrawal form was blank when she signed it and, that, in any case, she would not have signed had she known that she was eligible for benefits notwithstanding her settlement.

After reviewing the testimony, the hearing examiner concluded that Petitioner's decision to sign the voluntary withdrawal form was voluntary. The hearing examiner reasoned that,

> Both Ms. Schultz and Mr. Reddy provided credible testimony regarding their discussions with the [Petitioner] on June 13, 2000. The [Petitioner] claimed, at the hearing, that she was intimidated and frightened during her interview with Mr. Reddy, yet she went outside with him and Ms. Schultz and showed her vehicle to them. Despite the fact that there is no mention of a discussion of eligibility in her case notes, Ms. Schultz testified that she did not discuss the [Petitioner's] eligibility with her. Evidence to support this contention is found on the withdrawal form, in that the [Petitioner] opted to continue her household Medical Assistance benefits. Furthermore, it is the position of the [Petitioner] that she signed a blank form and that the information was completed after she signed the form. Regardless of whether the [Petitioner] felt intimidated during her interview, the form is clear on its fact when one considers the title of the form, "Voluntary Withdrawl (*sic*) Form." Even if no information was inserted prior to her signature, the obvious purpose of the form is to discontinue benefits on a voluntary basis and there is no dispute that the [Petitioner] signed this form.

Adjudication, 8. Accordingly, the hearing examiner denied the appeal, and the Department adopted the hearing examiner's determination. Petitioner then petitioned for this Court's review.

On appeal, Petitioner contends that the Department erred by failing to restore her benefits for the period from June 13, 2000, through December 2001[5] because Petitioner was entitled to the benefits notwithstanding her settlement.[6] Further, Peti-

---

5. Specifically, Petitioner requests that her food stamp benefits be reinstated at least 12 months prior to her request for restoration of benefits that was made on December 11, 2001. Petitioner requests that her cash assistance benefits be reinstated from June 13, 2000 through the reopening the case in either November or December 2001. Petitioner's Brief, 13.

6. Petitioner relies on Section 432.16 of the Public Welfare Code, Act of June 13, 1967,

P.L. 31, *as amended*, 62 P.S. § 432.16(c), to support her argument that she is entitled to a retroactive payment when the agency makes an error. Section 432.16 provides that,

> (c) The department shall establish procedures for retroactive correction of underpayments caused by administrative error provided that:
> (1) retroactive payments shall be limited to the twelve months preceding the month in which the underpayment first becomes known to the department;

tioner contends that she did not sign the withdrawal form voluntarily; rather, Reddy coerced her into signing it by showing her his badge, telling her that he was with the Fraud Investigative Unit and by telling her that she was no longer entitled to benefits. Therefore, Petitioner asks that the Department's determination be reversed.

■ This Court's scope of review of an adjudication of the Department is limited to determining whether the adjudication is supported by substantial evidence and in accordance with the law and whether petitioner's constitutional rights were violated. *Carr v. Department of Public Welfare*, 50 Pa.Cmwlth. 375, 412 A.2d 1126 (1980). As the fact finder, the hearing examiner's role is to resolve conflicts in testimony and reject the testimony of any witness. *Geriatric & Medical Services, Inc. v. Department of Public Welfare*, 151 Pa.Cmwlth. 209, 616 A.2d 746, 747 (1992); *see also Gomez v. Department of Public Welfare Office of Children Youth and Families*, 111 Pa.Cmwlth. 234, 533 A.2d

826, 828 (1987). The hearing examiner is empowered to determine questions of evidentiary weight and matters of credibility.

Here, the hearing examiner found the testimony of Schultz and Reddy to be credible on the point of whether Petitioner voluntarily signed the withdrawal form. Adjudication, Findings of Fact, 19–20. These credibility findings may not be set aside by this Court. *Carr*, 412 A.2d at 1128. Both Schultz and Reddy testified that Petitioner came into the office on June 13, 2000, intending to terminate her cash assistance and food stamp benefits. Nevertheless, Schultz informed Petitioner that she was entitled to the cash assistance and food stamp benefits notwithstanding her settlement. Test. Tr. 31–32. Reddy denied that he told Petitioner that she and her children would never be eligible for benefits again. Test. Tr. 43. The hearing examiner also believed Schultz's testimony that the Petitioner wanted to sign the "Voluntary Withdrawl [sic] Form." We agree with the Department that this large print title, even misspelled, states the pur-

(2) retroactive payments to correct improper denial of assistance shall be made for up to twelve months prior to the month in which the error first becomes known to the department, but in no case earlier than the date of application;

(3) for the purposes of determining continued eligibility and the amount of assistance, such retroactive corrective payments shall not be considered as income or as a resource in the month in which paid nor in the next following month.

In addition, the state and federal regulations provide that:

Individuals have a right to receive corrective payments when they have been underpaid *due to agency error or delay*. In cases, corrective payment shall be made promptly, so that the client will receive the check for the corrective payment within 30 calendar days from the date of verification of the underpayment.

55 Pa.Code § 175.23(b)(1)(iii)(emphasis added)

(a) Entitlement.

(1) The State agency shall restore to households benefits which were lost *whenever the loss was caused by an error by the State agency* or by an administrative disqualification for intentional Program violation which was subsequently reversed as specified in paragraph (e) of this section, or is there is a statement elsewhere in the regulations specifically stating that the household is entitled to restoration of lost benefits.

7 C.F.R. § 273.17(a)(1)(emphasis added).

Further, the regulations provide that if the client caused an error then she is entitled to a restoration of benefits. 55 Pa.Code § 227.24(d)(1)(ii)(A)(III). This regulation has no application here because the hearing examiner found that Petitioner intended to terminate her TANF benefits voluntarily. The fact that she may have later changed her mind doe not mean that her earlier decision was an underpayment error.

pose of the form with absolute clarity. Even Petitioner does not dispute the fact that she signed it.

Because the hearing examiner's findings are supported by substantial evidence, we conclude that Petitioner voluntarily waived her benefits for the period of June 13, 2000 through December 31, 2001, and that no error of law was committed.

Accordingly, we affirm the decision of the Department.

### ORDER

AND NOW, this 19th day of March, 2003, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated March 28, 2002, in the above-captioned matter is hereby affirmed.