Kathleen A. COYNE, Petitioner:

**PENNSYLVANIA HOUSING FINANCE AGENCY,**
**Respondent:**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 21, 2003.

Decided June 19, 2003.

Robert A. Wilson, Pittsburgh, for petitioner.

John F. Goryl, Harrisburg, for respondent.

**1.** Act of December 3, 1959, P.L. 1688, and added by the Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §§ 1680.401c 1680.410c.

**2.** These six payments, together with accumulated late charges and other fees totaled

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEAVITT.

Kathleen A. Coyne (Petitioner) petitions for review of an adjudication of the Pennsylvania Housing Finance Agency (PHFA) denying her application for emergency mortgage assistance under the Homeowner's Emergency Mortgage Assistance Loan Program (Act 91).[1] We vacate and remand.

By letter dated April 9, 2002, The Provident Bank, d/b/a PCFS Financial Services, Inc. (Provident), notified Petitioner that her mortgage was seriously in default because she had not made her monthly mortgage payments for the period from October 27, 2001 through March 27, 2002.[2] On May 1, 2002, Petitioner had a face-to-face meeting with a consumer credit counseling agency, ACTION Housing, Inc. (Action), to prepare a loan application through the Homeowners' Emergency Mortgage Assistance Loan Program (HEMAP loan), which was submitted to the PHFA on May 24, 2002. By letter of July 24, 2002, the PHFA denied Petitioner's HEMAP loan application for the reasons that follow:

1. [Petitioner] is not suffering financial hardship due to circumstances beyond [her] control based on: Total mortgage delinquency is not due to circumstances beyond [Petitioner's] control: [Petitioner] had no taxable income when the loan with Provident Bank originated.[3]

$12,737.95. Supplemental Record 4 (S.R.——).

**3.** Sections 404 C(a)(4) and (10) of Act 91 provide, in pertinent part:
   (a) No assistance may be made with respect to a mortgage or mortgagor under

2. No reasonable prospect of [Petitioner] resuming full mortgage payments within twenty-four (24) months and paying mortgage(s) by maturity based on: There is no basis to demonstrate [Petitioner] will receive an income sufficient to maintain the total monthly expenses within the 24 months allowed by law and be able to maintain the mortgage payments until maturity.[4]

S.R. 12.

Petitioner appealed the PHFA's staff decision on two grounds. First, the mortgage was initially supported by her friend and business partner, Dr. Lawrence Abrams. With his support, "it appeared at the time the loan was granted, a good loan, able to be paid in full." S.R. 13. The partnership subsequently broke up, through no fault of Petitioner's, when Dr. Abrams moved to Israel. Second, Petitioner alleged that there was a reasonable prospect of her resuming full mortgage payments within twenty-four (24) months in light of her pending grant applications and contract negotiations with G & W Laboratories. A telephonic hearing on her appeal was held by a hearing examiner on October 17, 2002.[5]

The relevant facts to emerge from the hearing are as follows. On October 16, 1997, Petitioner purchased a property located at 37 Wellington Drive, Pittsburgh, Allegheny County, Pennsylvania for $146,400. The purchase was made with the financial assistance of Dr. Abrams, who loaned her $87,840; Petitioner used

---

this article unless all of the following are established:

\* \* \*

(4) The mortgagor is a permanent resident of this Commonwealth and is suffering financial hardship *due to circumstances beyond the mortgagor's control* which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments.

\* \* \*

(10) For purposes of this section, in order to determine whether the financial hardship is due to circumstances beyond the mortgagor's control, the agency may consider information regarding the mortgagor's employment record, credit history and current income.

35 P.S. §§ 1680.404c(a)(4) and (10) (emphasis added).

4. Section 404 C(a)(5) of Act 91 provides, in pertinent part:

(a) No assistance may be made with respect to a mortgage or mortgagor under this article unless all of the following are established:

\* \* \*

(5) The agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within twenty-four (24) months after the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

35 P.S. § 1680.404c(a)(5).

5. A transcript of the hearing was produced and is part of the record. S.R. 16 38. However, due to a malfunction in the recording equipment, the transcript is incomplete. S.R. 38. On January 9, 2003, John F. Goryl, Associate Counsel for the PHFA, wrote a letter to Petitioner's counsel stating, in pertinent part:

I have no idea how much of the hearing was not recorded. Since you were representing [Petitioner] at the time I thought perhaps your notes of the hearing may indicate what occurred after the taping stopped.

I would ask you to review your notes and decide whether, in your opinion, there is a sufficient record on which to proceed with the Appeal. If so, we can proceed with briefing the case.

Reproduced Record 1a. The record does not contain a response from Petitioner's counsel, and Petitioner does not complain to this Court that the record is insufficient.

$60,560 of her cash savings to complete the purchase. In December, 1997, the loan from Dr. Abrams was paid off with the proceeds of a new first mortgage, which Petitioner obtained from AMPRESCO Residential Mortgage Company. On April 22, 1999, Petitioner refinanced with a new first mortgage from Heartland Home Finance, Inc. (Heartland) in the principal amount of $180,000.[6]

Some of the proceeds of the Heartland loan were used to pay off the AMPRESCO loan. The remaining proceeds of the loan were put into Petitioner's savings and used to pay off other obligations. Petitioner explained:

> The purpose of the loan was to essentially put that money in with my savings so that I could continue to make the mortgage payment until such time I was able to get my patents under control, grants and any other income under control.

S.R. 19. The debt service on the Heartland loan is $1,830.75 per month; Petitioner is not obligated to escrow payments for insurance and taxes. The loan has a 30 year term, with a balloon payment due in 15 years, and the interest rate is 11.85%. The Heartland loan was assigned to Provident in August of 2002.

At the time of the hearing on October 17, 2002, the loan payments had been in arrears since October 27, 2001. Petitioner's real estate taxes were also past due for the years 1999, 2000 and 2001. Approximately five months prior to the hearing, Petitioner cashed in some Treasury bonds to pay three years worth of other delinquent property taxes in the amount of $3,800.

Petitioner lives in the home with her estranged husband, Martin Coyne, who has a net income of $1,200 per month. Mr. Coyne contributes nothing to the upkeep of the home or to the household expenses. However, he has not contributed to Petitioner's financial difficulties; Petitioner is covered by Mr. Coyne's health insurance policy.

Petitioner is 57 years old. She is educated as a nurse, having received her B.S.N. from Duquesne University in 1966. She was then commissioned a Second Lieutenant in the United States Air Force and served as a flight nurse for five years. In 1972, she was injured in a flight crash, which left her unable to continue her career in the military. She retired and entered a graduate program at the University of Pittsburgh, where she earned a Master's Degree in 1978, and a Ph.D in 1981. Petitioner was employed by the University of Pittsburgh from 1981 to 1994; she was on an unpaid leave of absence from 1994 to 2001.[7]

Petitioner's employment history on her HEMAP loan application indicates that from 1995 1999, she earned $2,000 per month as President of "RNPE." From June, 1999 to January, 2001, she earned $1,500 per month as President of St. Jude Wound Care. From January of 2001 through April of 2002, she received no compensation as she tried to establish her own business, Expedite A 1. However, this employment history appears in conflict with Petitioner's testimony at the hearing. There, she testified that she had not filed a federal income tax return since 1996; that she had no income in 1997 and lived on savings while she cared for her ailing parents; that she spent most of 1998 caring

---

6. The Heartland mortgage loan was also executed by Petitioner's husband, Martin Coyne, but the Note secured by the Mortgage is in Petitioner's name alone.

7. The reason for this leave of absence is not of record.

for her mother until her death;[8] and that she was hospitalized on at least two occasions for her own serious health challenges.[9]

By the time of the hearing, Petitioner had no means of correcting her mortgage delinquency. Her savings had been exhausted, her income was nonexistent and she was meeting her everyday living expenses by borrowing from friends.[10] Petitioner did, however, expect her financial situation to improve in the near term. Specifically, she testified that she anticipated being able to resume her full monthly mortgage payments by February, 2003, because she had been hired to teach a course at Duquesne University for $50,000 per year, effective January, 2003, and starting as early as November 30, 2002, she expected to begin receiving substantial research grants.

On October 30, 2002, the hearing examiner issued an adjudication affirming the staff's decision. Specifically, she concluded that:

> [Petitioner] took out a mortgage on her home in 1999 when she had no taxable income. [Petitioner] had no taxable income for three years prior to originating the mortgage and has had no taxable income since then. [Petitioner] has not filed income tax returns since 1996. In this context, [Petitioner] is not suffering financial hardship due to circumstances beyond [her] control based on: *Total mortgage delinquency is not due to circumstances beyond [Petitioner's] con-*

*trol: [Petitioner] had no taxable income when the mortgage originated.*

S.R. 41 (emphasis added). Accordingly, the loan was again denied. Petitioner then sought this Court's review.

On appeal, Petitioner raises three issues for our review: (1) whether the hearing examiner's finding that Petitioner is not suffering financial hardship due to circumstances beyond her control is supported by substantial evidence; (2) whether the hearing examiner erred as a matter of law in concluding that Petitioner is not suffering financial hardship due to circumstances beyond her control because she had no taxable income when the mortgage originated; and (3) "[w]hether the within Appeal of the [PHFA's] decision with this Court acts as a supersedeas as to further actions by the mortgagee/mortgage holder to expose said premises or to proceed with a Sheriff's Sale." Petitioner's Brief at 3. We address these issues *seriatim*.

■ The PHFA's conclusion that Petitioner's financial hardship is not due to circumstances beyond her control is not supported by substantial evidence. The sole reason cited by PHFA to support its conclusion is that Petitioner had no taxable income when the mortgage originated. This fact is irrelevant to the statutory standard.

Although Petitioner was apparently self-employed at the time she obtained the mortgage, Heartland found that Petitioner, who is highly educated, could assume the debt, or it would not have extended her

---

8. Petitioner stated that caring for her parents "cost me a tremendous amount of money much more than I had budgeted. I had no help from my brother on that whatsoever." S.R. 19.

9. The record also indicates that in 1997 Petitioner was hospitalized for problems related to her lupus. S.R. 47. In October, 2001, Petitioner experienced further complications

with her lupus and diabetes, and in May, 2002, she was hospitalized in a diabetes-induced coma. *Id.*

10. Petitioner testified that the $150,000 in personal debt listed on her HEMAP loan application, S.R. 10 11, refers to money that she has borrowed from approximately 20 friends over the past several years. S.R. 27.

the loan. Unlike Petitioner's numerous friends, Heartland does not extend loans out of charity. Simply put, this was an arm's length transaction, and it is unfair and illogical to penalize Petitioner for her ability to obtain a mortgage when her future income may have been uncertain, as it often is for the self-employed. Indeed, were we to interpret Act 91 as the PHFA suggests, few individuals would be eligible for emergency mortgage assistance on the theory that an inability to make future mortgage payments should have been anticipated at the time the mortgage loan was secured.

■ However, this does not dispose of the matter. The second standard for a HEMAP loan set forth in Section 404 C(a)(5) of Act 91, 35 P.S. § 1680.404c(a)(5), requires that the applicant demonstrate a "reasonable prospect" of being able to resume mortgage payments within 24 months. On this standard, the hearing examiner made certain relevant findings. Specifically, she found that Petitioner "testified that she has reasonable prospect of resuming full mortgage payments within twenty-four (24) months and paying mortgage by maturity because of the job with Duquesne University and because she is anticipating receipt of five grants between November 30, 2002 and April 2003 totaling $1,450,000" and Petitioner "expects her income in 2003 from teaching, research and consulting to exceed $250,000," S.R. 40. However, the hearing examiner failed to explain whether she believed this testimony or assigned it any weight. Further, she did not make any legal conclusions with respect to this testimony.

Additional factual findings, which are absent from the adjudication, are needed in order to determine whether Petitioner is entitled to a HEMAP loan. Act 91 authorizes consideration of such matters as Petitioner's employment record, credit history and current income,[11] and there is ample, albeit sometimes conflicting, evidence in the record on those points. The hearing examiner, however, did not make any specific findings on these factors.[12] Indeed, although Petitioner's testimony regarding her employment history appears in conflict with the employment history she submitted with her HEMAP loan application, the hearing examiner failed to make any credibility or weight determinations in that regard.[13]

---

11. In fact, it appears that the hearing examiner misunderstood the significance of these factors. Section 404 C(a)(10) of Act 91 provides:

(10) For purposes of this section, in order to determine whether the financial hardship is due to circumstances beyond the mortgagor's control, the agency may consider information regarding the mortgagor's employment record, credit history and current income.

35 P.S. § 1680.404c(a).

In our view, the General Assembly included these factors to assist the PHFA in identifying loan applicants who, *inter alia*, are too irresponsible to maintain employment or lose their jobs for willful misconduct; misallocate their resources; or spend beyond their means. For example, a person who earns a good, steady income but chooses to indulge in extravagant vacations, expensive jewelry and luxury automobiles but not to pay the mortgage, is not a person contemplated to be eligible for a HEMAP loan under Section 404 C(a)(10) of Act 91. However, Act 91 does not instruct that an applicant's income at the time the mortgage was obtained is relevant, or as this hearing examiner concluded, dispositive.

12. The hearing examiner also failed to make any findings regarding the relationship, if any, between Petitioner's financial difficulties and the time and money Petitioner devoted to caring for her ailing parents as well as her own health issues.

13. These findings are necessary in order to determine whether Petitioner's case satisfied either of the standards for a HEMAP loan. As we have observed in other contexts, credibili-

Finally, we decline to rule on whether Petitioner's appeal of the PHFA adjudication acts as a supersedeas as to further foreclosure proceedings. Rule 1701(b) of the Pennsylvania Rules of Appellate Procedure provides:

> After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may: (1) Take such action as may be necessary to preserve the status quo ... grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

PA. R.A.P. 1701(b). In accordance with the Rules,[14] Petitioner could have requested supersedeas from the PHFA following its denial of her HEMAP loan application. Additionally, she may apply to the Allegheny County Court of Common Pleas, or other lower court, for a stay of an order *entered by that court* in foreclosure proceedings involving her property.[15]

We cannot provide Petitioner with an order staying proceedings that are not incidental to those below, nor can we issue an advisory opinion regarding the meaning of "pending" in Section 403 C(b)(6) of Act 91,[16] as she requests. *See Borough of*

*Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803, 804 (Pa. Cmwlth.1998) ("It is well established that a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect.").

For the foregoing reasons, the adjudication of PHFA is vacated, and the matter is remanded to the PHFA for additional factual findings consistent with this opinion.

Judge Smith Ribner concurs in the result only.

### ORDER

AND NOW, this 19th day of June, 2003, the order of the Pennsylvania Housing and Finance Agency dated October 30, 2002 in the above-captioned matter is hereby vacated, and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

ty determinations are the sole province of the fact-finder. *See, e.g. Gonzalez–Carmelo v. Department of Public Welfare,* 819 A.2d 175, 180 (Pa.Cmwlth.2003) ("As the fact finder, the hearing examiner's role is to resolve conflicts in testimony and reject the testimony of any witness.").

14. Rule 1732(a) of the Pennsylvania Rules of Appellate Procedure further provides that,

> [a]pplication for a stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas ... must ordinarily be made in the first instance to the lower court.... PA. R.A.P. 1732(a).

15. Indeed, it appears from her brief that Petitioner has obtained a stay from the Allegheny County Court of Common Pleas from execution of a default judgment Provident obtained against her in that court. Petitioner's Brief at 12 13.

16. It states:

> If the mortgagor applies for mortgage assistance payments, the agency shall promptly notify all of the mortgagees secured by the mortgagor's real property. The agency shall make a determination of eligibility within sixty (60) calendar days of receipt of the mortgagor's application. During the time that the application is pending, no mortgagee may commence legal action to foreclose upon its mortgage with the mortgagor.

> Section 403 C(b)(6) of Act 91, 35 P.S. § 1680.403c(b)(6).