IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela M. Cook,                         :
                    Petitioner          :
                                        :
          v.                            :    No. 594 C.D. 2015
                                        :    Submitted: October 9, 2015
Pennsylvania Housing Finance            :
Agency,                                 :
                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: February 19, 2016


          Angela Cook, *pro se*, petitions for review of an adjudication of the
Pennsylvania Housing Finance Agency (Housing Finance Agency) denying her
application for emergency mortgage assistance under the Homeowner's
Emergency Mortgage Assistance Loan Program (Act 91).[2]  It determined that the
financial hardship experienced by Cook and her husband, Gilbert Cook, was not

_____

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt
became President Judge.

[2] Act of December 3, 1959, P.L. 1688, added by the Act of December 23, 1983, P.L. 385, *as
amended*, 35 P.S. §§1680.401c–1680.412c.  The purpose of Act 91 is "to establish a program
which will, through emergency mortgage assistance payments, prevent widespread mortgage
foreclosures ... which result from default caused by circumstances beyond a homeowner's
control." *Crawl v. Pennsylvania Housing Finance Agency*, 511 A.2d 924, 927 (Pa. Cmwlth.
1986) (emphasis omitted).

due to circumstances beyond their control, and that the Cooks' household income was sufficient to correct their mortgage delinquency. Discerning no error, we affirm.

By letter dated November 3, 2014, Wells Fargo Bank, N.A., notified the Cooks that the mortgage on their residence at 128 Second Lock Road, Lancaster, was delinquent in the amount of $4,347 as of August 2014. Mrs. Cook met with a consumer credit counseling agency, Tabor Community Services, Inc., to apply for a Homeowner's Emergency Mortgage Assistance Program (HEMAP) loan. Tabor forwarded the application to Housing Finance Agency for review. On January 5, 2015, Housing Finance Agency notified the Cooks that the loan application had been denied. Supplemental Reproduced Record at 24b (S.R.R. __). The Cooks appealed, and on February 12, 2015, a Hearing Examiner conducted a telephonic hearing. Mrs. Cook testified on behalf of herself and her husband.

The factual background follows. Mrs. Cook purchased the home in 2007 for $198,900, before she married Mr. Cook. In 2012, Mrs. Cook refinanced the mortgage loan with Wells Fargo, N.A., and added Mr. Cook's name to the deed. Wells Fargo currently holds a first mortgage on the property in the amount of $150,000. In 2013, the Cooks took out a second mortgage on the property with Lanco Federal Credit Union in the amount of $10,000. Mrs. Cook testified that they borrowed this money to complete home repairs after their water heater exploded.

Mrs. Cook testified that she and her husband have not filed federal tax returns since 2010. She submitted pay statements, bank statements and 2014 W-2 Forms to document the Cooks' household income. Mrs. Cook has been employed

2

with the City of Lancaster as a school crossing guard since 2005. According to her W-2 Form, Mrs. Cook's gross income from the School District in 2014 was $5,765. Her net income was $4,990, which, averaged out over 12 months, equals $416 in monthly net income from the School District.[3] Mrs. Cook also works part-time for Friends of the Railroad Museum to supplement her income. A W-2 Form issued by the museum reported that Mrs. Cook's gross income for 2014 was $3,646; this resulted in net income of $3,208 for 2014, or $229 per month.[4] Mrs. Cook also began collecting Social Security benefits in 2004 and currently receives $1,496 per month.

In 2009, Mr. Cook began working for the U.S. Coast Guard as a contractual employee. His contract expired in June 2013 but was renewed in August of 2013. Mr. Cook did not work in September 2013 because of a government shutdown.[5] According to Mr. Cook's 2014 W-2 Form, his gross wages from the Coast Guard were $80,757. After deductions for state and federal taxes, 401K/pension and health insurance, Mr. Cook's net income for 2014 was $49,518, or $4,127 per month. Between June and August 2013, Mr. Cook began collecting Social Security benefits in the amount of $1,540 per month.

---

[3] This figure comports with Housing Finance Agency's figure of $418.87 at the time of the hearing.

[4] Mrs. Cook submitted pay statements for her museum job from January 10, 2015, through February 20, 2015. These records indicate that Mrs. Cook earned $10.82 per hour and worked 23, 31.5, 8, 39.5, 14, and 53.5 hours per week during this period. Housing Finance Agency calculated Mrs. Cook's average net monthly income from the museum job to be $1,170 based on an average of three pay statements. S.R.R. 2b.

[5] Mrs. Cook did not provide testimony as to whether Mr. Cook was paid during the month of September 2013.

As of the hearing, the Cooks' total monthly expenses included a monthly housing expense of $1,485 (first mortgage: $1,082, second mortgage: $210, utilities: $193), plus $918 in unsecured debt payments, plus $2,318 in living expenses such as gasoline, groceries and phone services. This totals $4,721.

Mrs. Cook testified that the couple's financial troubles began in February 2013 when their hot water heater exploded. Although the Cooks secured a second mortgage to replace the water heater and repair the damage to their home, they then incurred additional expenses of $5,000 to remediate mold damage. Although Mrs. Cook did not elaborate on what, if any, other costs beyond the $5,000 were incurred, she testified that these additional costs caused the couple to fall behind on most, if not all, of their bills. Accordingly, they were not able to set aside funds for future mortgage payments.

Mrs. Cook testified that their financial troubles were exacerbated when Mr. Cook had eye surgery in August 2014, requiring him to miss six weeks of work. At around the same time, in August 2014, Mrs. Cook had stomach surgery. After her recovery Mrs. Cook returned to her crossing guard job in September 2014 when the new school year began. Mrs. Cook acknowledged that she would not have been paid during her recovery because school was not in session.

Based on Mrs. Cook's testimony and financial documentation for 2014, the Hearing Examiner found as follows:

> Based on a review of the W-2/1099 Statements for 2014, the applicants generated total income from employment of $92,243, or an average net monthly income of approximately $7,711 (including social security benefits) after deductions for federal, state and local taxes. The monthly expenses reported at appeal total $4,721. In this context, it appears that the applicants have

4

been employed and have had sufficient income to pay the mortgage had it been made a priority.

Additionally, the total monthly housing expense alone of $1,485 represents only 21% of the average net monthly income as calculated at application review and 19% of the average net monthly income per the W-2/1099 statements and social security benefits for 2014. The Agency feels that 40% of the average net monthly income should be sufficient to maintain the total housing expense if a homeowner is to be successful in maintaining the monthly payments and other household expenses. Therefore, it appears that the applicants were generating sufficient income to maintain the mortgage payment and total monthly expenses had it been made a priority.

Also, based on an average net monthly income of $7,711 compared to the total monthly expenses of $4,721[,] the applicants have had a surplus of approximately $2,990 each month after all the expenses have been paid including the mortgage payment – a total of $35,880 in 2014.

S.R.R. 5b-6b. The Hearing Examiner further reasoned that "the circumstances do not account for the total mortgage delinquency or the applicants currently having no funds saved to apply toward the total mortgage delinquency of 6 months or approximately $6,492 through January 2015. These situations further evidences [sic] money mismanagement." S.R.R. 6b. The Hearing Examiner concluded that, at all relevant times, the Cooks had sufficient income to make the monthly mortgage payment of $1,082 and any hardship they experienced was not the result of circumstances beyond their control.[6] Mrs. Cook now petitions for this Court's review.

---

[6] On March 8, 2015, after the Hearing Examiner rendered her decision, the Cooks submitted additional financial information that the Hearing Examiner requested at the hearing. S.R.R. 85b-94b. Among the documents were Mr. Cook's most recent pay statements; no tax filings were
**(Footnote continued on the next page . . .)**

On appeal,[7] Mrs. Cook argues that Housing Finance Agency erred in determining that the Cooks' financial hardship was not due to circumstances beyond their control. Specifically, Mrs. Cook challenges Agency's conclusions that the Cooks' income was sufficient to maintain the mortgage had it been a priority and that their financial hardship was due to money mismanagement.

Under Act 91, an applicant for an emergency mortgage assistance loan must satisfy certain requirements for eligibility. Section 404-C of Act 91 states, in relevant part:

> (a)  No assistance may be made with respect to a mortgage or mortgagor under this article unless all of the following are established:
>
> * * *
>
> (4)  The mortgagor is a permanent resident of this Commonwealth and is suffering financial hardship due to circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments.
>
> * * *
>
> (8)  The agency has determined, based on the mortgagor's financial statement, that the mortgagor has insufficient household income or net worth to correct the delinquency or

---

**(continued . . .)**
submitted. The Hearing Examiner reassessed the Cooks' income and expense data and sent a letter to the Cooks advising them that her decision was not impacted by the new financial data. S.R.R. 95b.

[7] Our review is to determine whether constitutional rights were violated, an error of law was committed, or the findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Felegie v. Pennsylvania Housing Finance Agency*, 523 A.2d 417, 419 (Pa. Cmwlth. 1987).

delinquencies within a reasonable period of time and make full mortgage payments.

* * *

(10) For purposes of this section, in order to determine whether the financial hardship is due to circumstances beyond the mortgagor's control, the agency may consider information regarding the mortgagor's employment record, credit history and current income.

35 P.S. §1680.404c. As fact-finder, the hearing examiner has complete authority over questions of witness credibility and evidentiary weight. *Coyne v. Pennsylvania Housing Finance Agency*, 826 A.2d 925, 930 n.13 (Pa. Cmwlth. 2013).

Mrs. Cook first argues that the record does not support Housing Finance Agency's finding that the Cooks' income was sufficient to pay the mortgage had it been a priority. Mrs. Cook contends that their expenses exceeded their income due to the expiration of Mr. Cook's employment contract; the couple's medical issues; Mrs. Cook's fluctuating seasonal wages from Friends of the Railroad Museum; and Mrs. Cook's receipt of wages as a crossing guard only when school is in session. Cook further contends that Housing Finance Agency overestimated her income from Friends of the Railroad Museum to be $1,190 per month; her actual net monthly income from that job is approximately $400. Housing Finance Agency counters that, even taking into account the Cooks' financial setbacks, they had sufficient income to maintain the monthly mortgage payment and sufficient means to either recover fully or apply some funds toward the delinquency. We agree with Housing Finance Agency and find that the Hearing Examiner's legal conclusions are supported by the record.

7

By the Court's calculation, the Cooks' W-2 Forms indicate that Mrs. Cook's net monthly income for 2014 was $2,141[8] and Mr. Cook's was $5,667,[9] for a total of $7,808. The Cooks' total monthly expenses for 2014 were $4,721.[10] Based on these figures, the Cooks had a surplus of $3,087 per month during 2014, which should have been sufficient to cover the unexpected $5,000 expenditure the Cooks claimed to have incurred after their water heater exploded in 2013.

Mrs. Cook also cites surgeries that she and Mr. Cook underwent in August 2014, which left them unable to work. According to Mrs. Cook's testimony, however, Mr. Cook had leave time accrued and was paid for four of the six weeks he was out of work. Mrs. Cook would not have been paid for her school crossing guard position in August because school was not in session. Stated another way, the Cooks did not experience a significant wage loss as a result of the surgeries in 2014. Moreover, Mrs. Cook offered no evidence that the surgeries resulted in out-of-pocket expenses for the Cooks. Thus, because none of the household income was diverted to medical expenses, the entirety of the Cooks' income, including Mr. Cook's income and their combined Social Security benefits, could have covered the Wells Fargo mortgage payment and all of their other regular monthly expenses.

Mrs. Cook also challenges Housing Finance Agency's finding that the Cooks' hardship was attributable to money mismanagement. She asserts that she always prioritized her mortgage payments, which she had automatically deducted

---

[8] $416 (School District) + $229 (Museum) + $1,496 (Social Security) = $2,141.

[9] $4,167 (Coast Guard) + $1,540 (Social Security) = $5,667.

[10] $1,485 (housing expense, including first and second mortgages and utilities) + $918 (unsecured debt) + $2,318 (living expenses, including groceries, cell phone, automobile, prescriptions and co-pays) = $4,721.

8

from her checking account beginning in 2007 when she purchased the home. Mrs. Cook points to this arrangement as evidence of her fiscal responsibility. Notwithstanding Mrs. Cook's efforts to ensure her mortgage was timely paid for more than five years, we conclude that Housing Finance Agency's finding is supported by the record. That the Cooks had surplus income of $3,087 per month from January through August 2014 and insufficient funds to pay their mortgage beginning in August is evidence of money mismanagement. This conclusion is buttressed by the fact that the Cooks pay approximately $900 per month toward unsecured credit card debt, which by its nature does not jeopardize ownership of their home. This Court has consistently held that voluntary decisions that ultimately result in financial hardship are not considered circumstances beyond a mortgagor's control. *Willard v. Pennsylvania Housing Finance Agency*, 533 A.2d 794, 795 (Pa. Cmwlth. 1987).

For all of the foregoing reasons, we affirm the Pennsylvania Housing Finance Agency's determination that the Cooks were not eligible for an emergency mortgage assistance loan under Section 404-C of Act 91, 35 P.S. §1680.404c.

_____

MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela M. Cook,                          :
              Petitioner        :
                                   :
         v.                              :  No. 594 C.D. 2015
                                   :
Pennsylvania Housing Finance    :
Agency,                                  :
              Respondent        :

## **O R D E R**

AND NOW, this 19th day of February, 2016, the order of the Pennsylvania Housing Finance Agency in the above-captioned matter, dated March 7, 2015, is AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge