# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric M. O'Brien,      :
           Petitioner      :
                :
        v.      :   No. 2089 C.D. 2015
                :   Submitted: March 4, 2016
Pennsylvania Housing Finance Agency,  :
           Respondent   :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: April 18, 2016**

Eric M. O'Brien (Homeowner), representing himself, petitions for review of an order of the Pennsylvania Housing Finance Agency (Agency) that denied his application for emergency mortgage assistance under the act known as the Homeowner's Emergency Mortgage Assistance Loan Program (HEMAP or Act 91).[1] The Agency denied Homeowner's application for a HEMAP loan on the ground that Homeowner's mortgage delinquency could not be attributed to circumstances beyond his control. Homeowner contends the Agency erred in denying his loan application on the basis that he was not suffering a financial hardship caused by circumstances beyond his control. Upon review, we affirm.

---

[1] Act of December 3, 1959, P.L. 1688, added by the Act of December 23, 1983, P.L. 385, as amended, 35 P.S. §§1680.401c-1680.410c. The purpose of Act 91 is "to establish a program which will through emergency mortgage payments prevent widespread mortgage foreclosures ... which result from default caused by circumstances beyond a homeowner's control." Crawl v. Pa. Hous. Fin. Agency, 511 A.2d 924, 927 (Pa. Cmwlth. 1986).

# I. Background

In June 2015, Homeowner applied to the Agency for a HEMAP loan. In his brief, Homeowner asserts he fell behind on his residential mortgage in September 2014 after incurring unplanned expenses for health reasons. At that time, Homeowner traveled to the Mayo Clinic and was ultimately diagnosed with Parkinson's disease. Homeowner's wife, Victoria O'Brien (Wife), helped finance his trip with a 401k loan.

However, Wife suffered a loss of income after her layoff from a second job. In addition, beginning in April 2014, Wife began living and working in Columbus, Ohio. As such, Wife now paid rent for an apartment and had a second set of household expenses. In addition, Wife took family medical leave to accompany Homeowner on his trip to the Mayo Clinic. This resulted in a smaller paycheck for that period.[2]

Homeowner's financial problems worsened over the winter. Homeowner and Wife met with a credit counseling agency in June 2015. Homeowner, through the credit counselor, applied to the Agency for a HEMAP loan. In July 2015, the Agency denied Homeowner's HEMAP application. Homeowner requested an appeal, and the Agency scheduled a hearing.

---

[2] Homeowner also points out that he suffered a loss of approximately $298,000 in the early 2000s as a result of criminal activities by his stockbroker. Although the perpetrator was ordered to pay Homeowner restitution, he received, at most, $2,000. See Supplemental Reproduced Record at 50b. Nonetheless, Homeowner maintained his mortgage payments until September 2014.

In August 2015, Homeowner participated in a telephonic hearing before Agency Hearing Examiner Resa Kepner (Hearing Examiner). In her September 2015 decision affirming the Agency's decision denying Homeowner's HEMAP application, Hearing Examiner made the following findings, calculations and conclusions.

Upon his mother's death, Homeowner inherited one half of his childhood home in Pittsburgh. In July 1988, Homeowner purchased the remaining half of the property. At the time of Hearing Examiner's decision, First Merit Bank held a mortgage on Homeowner's property in the amount of $38,190.97. The mortgage originated at the time of Homeowner's purchase.

According to a November 2014 Act 91 notice, mortgage payments were due from September 2014. An April 2015 bank statement reflected a total amount due of $11,265.24 through May 1, 2015. In addition, First Merit Bank completed a mortgage information sheet reflecting a total delinquency of $12,069.27 through June 30, 2015.

Homeowner's monthly housing expense of $1,200, reported at the time of application and at the time of appeal, included the following items:

| Subject | Monthly Expenditure At Application |
|---|---|
| Mortgage Payment | $730 |
| Real Estate Taxes | Escrowed |
| Hazard Insurance | Escrowed |
| Utilities | $470 |
| Total | $1,200 |

3

Supplemental Reproduced Record (S.R.R.) at 4b.

In addition, Homeowner had a monthly installment debt consisting of an auto loan payment of $535. S.R.R. at 4b. Homeowner also had monthly living expenses of $631 at the time of his application and $756 at the time of appeal. Id. This resulted in the following total monthly expenses at the times of application and appeal:

| Subject | Monthly Expenditure At Application/Appeal |
|---|---|
| Total Monthly Housing Expenses | $1200/$1200 |
| Monthly Installment Debt | $535/$535 |
| Monthly Living Expenses | $631/$756 |
| TOTAL HOUSEHOLD EXPENSES | $2,366/$2,491 |
| Wife's payroll deductions | $0/$301 |
| Wife's expenses for Ohio residence | $0/$1,225 |
| TOTAL | $2,366/$4,017 |

S.R.R. at 5b.

In determining Homeowner's monthly income, Hearing Examiner reviewed Homeowner's W-2 statements and trust distributions. Hearing Examiner found that Homeowner's monthly income from employment, self-employment and trust distributions totaled approximately $2,750 in 2013, $2,885 in 2014 and $2,881 in 2015 (to date of decision). S.R.R. at 5b. Hearing Examiner reasoned that this income alone should have been sufficient to cover the monthly household expenses of $2,491. Id. In fact, Homeowner's income should have left a monthly surplus of $259 in 2013, $390 in 2014 and 2015, for a total surplus of $3,108 in 2013, $4,680 in 2014 and $2,730 through July 2015. Id. However, Homeowner's

4

mortgage payments remained due from September 2014 through the time of appeal. Id.

Further, based on a review of Homeowner and Wife's joint federal tax returns, W-2 statements and trust distributions, Hearing Examiner calculated Homeowner and Wife's net monthly income from employment, self-employment and trust distributions as approximately $5,267 in 2013, $6,217 in 2014 and $5,475 through July 2015. S.R.R. at 6b. Even considering their increased expenses beginning in 2014, when Wife began working and residing in Columbus, Ohio, Hearing Examiner calculated Homeowner and Wife's monthly income as $6,217 in 2014 and $5,475 in 2015. Id. Based on these calculations, Hearing Examiner determined Homeowner and Wife would have had a surplus of $2,200 per month or $26,400 in 2014, and a surplus of $1,458 per month through July 2015, for a total of $10,206 through July 2015. Id. However, Homeowner had a mortgage delinquency of 11 months, or approximately $12,799.66 through July 2015.

Therefore, Hearing Examiner observed, Homeowner and Wife should have had sufficient income to maintain the mortgage payment, meet their total monthly expenses and save enough funds to reduce the mortgage delinquency. S.R.R. at 6b. However, at the time of application, Homeowner had no money that could be applied toward the mortgage delinquency. Id. Hearing Examiner noted these facts reflected money mismanagement. Id. Consequently, Hearing Examiner determined the Agency properly denied Homeowner's application for a mortgage assistance loan under Section 404-C(a)(4) of Act 91, 35 P.S.

5

§1680.404c(a)(4), on the ground that Homeowner's financial hardship could not be attributed to circumstances beyond his control. Homeowner petitions for review.[3]

## II. Discussion

## A. Argument

Homeowner contends Hearing Examiner erred in failing to find his financial hardship resulted from circumstances beyond his control where Homeowner and Wife encountered a series of events making it impossible for them to pay down their mortgage delinquency without emergency assistance. In particular, Homeowner asserts the Agency, in denying his loan, failed to take into account several factors.

First, although Hearing Examiner's decision incudes Wife's income in calculating the total household income, Homeowner argues Wife's income should have been excluded because she lives and works outside the Pittsburgh area during the week. Second, Hearing Examiner's decision failed to account for the cost of household healthcare.

---

[3] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings were supported by substantial evidence. R.M. v. Pa. Hous. Fin. Agency, 740 A.2d 302 (Pa. Cmwlth. 1999).

As fact-finder, the hearing examiner has complete authority over questions of witness credibility and evidentiary weight. A&J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013); see Coyne v. Pa. Hous. Fin. Agency, 826 A.2d 925 (Pa. Cmwlth. 2003). It is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the hearing examiner's necessary findings, we will not disturb those findings on appeal. A&J Builders.

6

Third, although Wife received a taxable $10,000 bonus in 2014, this should not have been considered income because Wife's employer required that this money be used for moving expenses. In fact, Wife used this money for approximately one year's rent. However, Homeowner asserts Hearing Examiner's decision does not reference the bonus money or indicate that it was not considered in calculating Homeowner's actual income for 2014.

Additionally, in 2014, Wife lost her second job, which paid her about $9,000 to $10,000 per year. This job helped pay off Wife's car loan. Homeowner further asserts that if Wife would have kept her second job, that money would have been applied to additional costs related to her job transfer or to home expenses.

Further, in early 2015, Homeowner learned that his mortgage lender required more than the amount originally in arrears to reactivate his account. The amount exceeded anything Homeowner could afford in a single payment. Homeowner contends the Agency overlooked this fact.

In sum, Homeowner argues, he and his wife suffered several setbacks since 2014, including health and job issues. These setbacks, which occurred closely together, were beyond Homeowner's control. Therefore, Homeowner requests that we reverse the Agency's decision denying him a HEMAP loan.

### B. Analysis

In order to qualify for a HEMAP loan, a homeowner must show he meets the eligibility criteria in Act 91. Coyne v. Pa. Hous. Fin. Agency, 826 A.2d

925 (Pa. Cmwlth. 2003); Crawl v. Pa. Hous. Fin. Agency, 511 A.2d 924 (Pa. Cmwlth. 1986). Further, the Agency's interpretation of Act 91 is entitled to great weight and may only be overturned if such construction is clearly erroneous. Horton v. Pa. Hous. Fin. Agency, 511 A.2d 917 (Pa. Cmwlth. 1986).

In the present case, Hearing Examiner determined Homeowner failed to establish that his financial hardship resulted from circumstances beyond his control. Sections 404-C(a)(4) and (10) of Act 91 state:

> (a) No assistance may be made with respect to a mortgage or mortgagor under this article unless ….
>
> * * * *
>
> (4) The mortgagor … is suffering financial hardship due to circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments.
>
> * * * *
>
> (10) For purposes of this section, in order to determine whether the financial hardship is due to circumstances beyond the mortgagor's control, the agency may consider information regarding the mortgagor's employment record, credit history and current income.

35 P.S. §§1680.404c(a)(4) & (10) (emphasis added).

In addition, the Agency's regulations governing financial hardship due to circumstances beyond the homeowner's control, set forth in the Pennsylvania Code, pertinently provide:

8

(a) *General.* The Agency will consider all relevant factors when evaluating whether the homeowner is suffering financial hardship and whether the financial hardship is due to circumstances beyond the homeowner's control, including the following:

(1) The homeowner's past and present household income and reasons for reductions in household income.

(2) Assets which were or are available and could have been or can be liquidated to correct the mortgage delinquency. The Agency will not consider assets in a pension, profitsharing, annuity or similar retirement plan or contract as available for liquidation to the extent that these funds are reasonably necessary for the support of the homeowner, or dependents or the surviving spouse of the homeowner.

\* \* \* \*

(4) The homeowner's employment history—including unemployment, underemployment and the reasons therefore—and eligibility for other types of financial assistance.

(b) *Examples.* Examples of circumstances beyond the mortgagor's control which result in financial hardship to the mortgagor include the following:

\* \* \* \*

(2)  Loss, reduction or delay in receipt of Federal, State or other Government benefits (for example, Social Security, Supplemental Security Income, Public Assistance, Government Pensions), or of private benefit payments—for example, pensions, annuities, retirement plans.

(3)  Loss, reduction or delay in receipt of income because of the death or disability of a person who contributed to the household income.

\* \* \* \*

9

(5)    Expenses actually incurred related to uninsured damage or costly repairs to the mortgaged premises affecting its habitability.

(6)    Expenses related to death or illness in the homeowner's household or of family members living outside the household which reduce the amount of household income.

(7)    Loss of income or substantial increase in total housing expenses because of a divorce, abandonment, separation from a spouse or failure to support.

* * * *

(c)    *Disallowance.* The following circumstances will not be considered by the Agency to be beyond the mortgagor's control:

* * * *

(3) When the homeowner had sufficient income to pay his mortgage, but failed to do so. In this regard, if the homeowner's total housing expense is less than or equal to 40% of net effective income, and no reasonable cause for financial hardship is demonstrated by the homeowner, nonpayment of the mortgage debt will not be considered to be a circumstance beyond the homeowner's control.

(4) When the homeowner's financial hardship was a result of money mismanagement or an over extension of credit to the homeowner. In this regard, the Agency will consider the following in determining whether the homeowner used prudent financial management:

(i) The homeowner's continued payment of normal and necessary living expenses after the financial hardship occurred will not be considered evidence of poor financial management. The homeowner's continuing to make reasonable payments on debts reasonably incurred prior to the financial hardship also will not be considered evidence of poor financial management.

(ii) Debts incurred or expenditures made by the homeowner for non-necessities, during the financial hardship, which exceeded the homeowner's ability to pay, will be considered evidence of poor financial management.

\* \* \* \*

(e) *Cause of financial hardship.* In determining the cause of the financial hardship, the Agency will determine whether the cause is one event—such as the loss of a job, separation or divorce, sickness or injury—or whether a series of factors beyond the homeowner's control, in combination, caused the financial hardship.

12 Pa. Code §31.205.

In the instant case, Hearing Examiner determined Homeowner was not suffering from financial hardship beyond his control because his monthly income from trust distributions, employment and self-employment exceeded his total expenses, including total housing expenses by $4,680 in 2014 and by $2,730 through July 2015. S.R.R. at 4b-6b.

Further, Homeowner and Wife's combined total income, exceeded their combined expenses, including Wife's separate living expenses, by $2,200 per month or $26,400 annually in 2014, and by $1,458 per month or $10,206 through July 2015. S.R.R. at 5b. However, at the time of Homeowner's July 2015 appeal, he had $0 that he could apply toward his mortgage delinquency. Id. Therefore, Hearing Examiner determined Homeowner's financial hardship resulted from money mismanagement rather than from circumstances beyond his control. Id.

11

On appeal here, Homeowner first argues Hearing Examiner should not have included Wife's income in calculating his total household income because she works and maintains a separate residence in Columbus, Ohio. Homeowner further maintains that Hearing Examiner's decision failed to account for the costs of household healthcare.

In her decision, Hearing Examiner noted Homeowner and Wife's federal tax return, processed as married filing jointly, reflected a total annual income of $74,517 for an average net monthly income of $5,657.[4] S.R.R. at 2b. Based on their W-2 Forms and trust distributions, Hearing Examiner calculated Homeowner and Wife's actual combined net monthly income during 2014 as $6,217, and $5,475 through July 2015. S.R.R. at 6b. Homeowner and Wife's combined net monthly income exceeded their total monthly expenses of approximately $4,020 by more than $2,000 per month at the time of Homeowner's June 2014 application and by more than $1,400 per month at the time of Homeowner's July 2015 appeal. Because Homeowner and Wife had sufficient income to maintain Homeowner's mortgage and meet Wife's second household expenses, we discern no error or abuse of discretion in Hearing Examiner's inclusion of Wife's income in calculating Homeowner and Wife's total monthly expenses.

More to the point, even excluding Wife's income and expenses, Hearing Examiner determined Homeowner's average net monthly income, $2,939

---

[4] In its brief, the Agency explained that these figures are an estimate based on a 25% tax deduction. Respondent's Br. at 7, n.3.

12

at the time of application, should have been sufficient to cover his total monthly expenses of $2,366, *including* the $730 per month mortgage payment. S.R.R. at 5b. Also, review of Homeowner's W-2 Forms alone (not reflecting trust distributions and self-employment) reflected an average net monthly income of $2,885 in 2014 and $2,881 to date in 2015, which should have been sufficient to cover Homeowner's total expenses of $2,366 at time of application and $2,491 at time of appeal. See S.R.R. at 3b-5b. Therefore, Homeowner should have been able to maintain his mortgage payments based on his income alone.

Sensitive to Homeowner's health-related arguments, we examine evidence regarding his healthcare costs. Homeowner testified he was covered under his wife's employer's health insurance plan. See Agency Hr'g, 8/11/15, Notes of Testimony (N.T.) at 9; S.R.R. at 33b. Homeowner also testified that other than the trip to the Mayo Clinic, which his wife paid for with a 401k loan in the amount of $2,000, he had no medical expenses other than co-pays. N.T. at 9-10, S.R.R. at 33b-34b. Further, Homeowner did not testify that Wife had any other medical expenses. See N.T. at 9; S.R.R. at 34b. Therefore, we reject Homeowner's contention that Hearing Examiner's decision failed to account for the costs of household healthcare.

Homeowner next contends Wife received a taxable $10,000 bonus in 2014, which she used as approximately one year's rent for her Columbus, Ohio apartment. Homeowner asserts Hearing Examiner's decision does not reference the bonus money or indicate whether Hearing Examiner considered it in

13

calculating his 2014 income. Homeowner further asserts Wife lost her second job, which paid her about $9,000 to $10,000 per year.

In response, the Agency indicated in its brief that Wife's $10,000 lump sum payment "should have offset any costs associated with her relocation and covered some of the rent payments." Respondent's Br. at 16. Hearing Examiner determined Homeowner had no expenses for Wife's apartment at the time of his June 2015 application. S.R.R. at 5b. This is consistent with Homeowner's testimony that Wife used the $10,000 bonus for approximately one year's rent. As discussed above, Homeowner had sufficient monthly income at application ($2,885) to meet his total monthly expenses of $2,366. Id.

Also, at the time of Homeowner's August 2015 appeal, Homeowner and Wife had sufficient net monthly income ($5,475) to cover their total expenses of $4,017, which included expenses for Wife's Ohio residence. Id. Moreover, Hearing Examiner's decision included only Wife's income from Verizon, her primary employer. Nothing in the record indicates Hearing Examiner included any income derived from Wife's second job. See Respondent's Br. at 16. Accordingly, we discern no error or abuse of discretion in Hearing Examiner's calculations or ultimate decision related to Wife's $10,000 lump sum payment or income from her second job.

Finally, Homeowner contends his mortgage lender required the full amount originally in arrears to reactivate his account. Homeowner asserts the

14

amount required exceeded what he could afford in a single payment and that Hearing Examiner overlooked this fact.

We disagree. Hearing Examiner's calculations are borne out by the record and support her determination that Homeowner's income alone should have been sufficient to maintain his mortgage at the time of his June 2015 application. Moreover, Hearing Examiner's calculations indicate that Homeowner and Wife's combined net monthly income should have been sufficient to cover their total monthly expenses at the time of Homeowner's application with a surplus of at least $2,000 per month. See S.R.R. at 3b-6b. Even with Wife's additional relocation expenses, Homeowner and Wife's combined income should have been sufficient to meet their total monthly expenses at the time of Homeowner's July 2015 appeal with a surplus of at least $1,400 per month. Id. Nevertheless, at the time of Homeowner's application, he had no money saved that could be applied to the mortgage, which after 11 months reached a total of $12,799.66 through July 2015. Id.

Given these circumstances, the Hearing Examiner did not commit error in concluding that Homeowner's failure to pay *anything* toward his mortgage for an extended time, coupled with his failure to save *any* money in lieu of making mortgage payments, was the cause of his predicament. The bank's interest in bringing the mortgage current was not the operative problem.

The provisions of Act 91, and the Agency regulations, quoted above, dictate our conclusion: we find no error or abuse of discretion in the Hearing

15

Examiner's determination that Homeowner failed to establish that his mortgage delinquency arose from a financial hardship caused by circumstances beyond his control. Accordingly, the Agency properly denied Homeowner's HEMAP application under Section 404-C(a)(4) of Act 91, 35 P.S. §1680.404c(a)(4).

For these reasons, we affirm the Agency's final order.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric M. O'Brien,                          :
                    Petitioner            :
                                          :
          v.                              :    No. 2089 C.D. 2015
                                          :
Pennsylvania Housing Finance Agency,      :
                    Respondent            :

# **O R D E R**

**AND NOW**, this 18th day of April, 2016, for the reasons stated in the foregoing opinion, the order of the Pennsylvania Housing Finance Agency is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge